# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MATT CAHILL,

          Appellant,

       v.

DEPARTMENT OF HEALTH AND
    HUMAN SERVICES,

          Agency.

DOCKET NUMBER
AT-1221-14-0906-W-1

DATE: April 1, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Shaun Yancey</u>, Esquire, Atlanta, Georgia, for the appellant.

<u>Julie A. Sammons</u>, Esquire, Atlanta, Georgia, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. However, we MODIFY the initial decision to find that the appellant made a nonfrivolous allegation that his 2012 disclosure was protected, but that he failed to make a nonfrivolous allegation that his 2012 disclosure was a contributing factor in a personnel action. Except as expressly modified by this Final Order, we AFFIRM the initial decision.

¶2      After exhausting his administrative remedies with the Office of Special Counsel (OSC), the appellant filed the instant IRA appeal with the Board, claiming that the agency took various personnel actions against him in 2008, 2012, and 2013 in retaliation for disclosures that he made in 2004 and 2012. Initial Appeal File (IAF), Tab 1, Tab 5 at 44-75. He requested a hearing. IAF, Tab 1 at 3. After notifying the appellant of his jurisdictional burden in an IRA appeal and giving him an opportunity to respond, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 10, Initial Decision (ID) at 1, 9-10. He found that the appellant failed to make a nonfrivolous allegation that his 2004 disclosures were a contributing factor in a personnel action, ID at 5-6, and that the appellant failed to make a nonfrivolous allegation that his 2012 disclosure was protected, ID at 6-9.

¶3      The appellant has filed a petition for review, arguing that his 2004 disclosures were a contributing factor in a 2008 reduction in pay, which was a

personnel action within the meaning of the Whistleblower Protection Act (WPA).[2] Petition for Review (PFR) File, Tab 1 at 14-18. He further argues that the administrative judge failed to consider whether his 2004 disclosure was a contributing factor in the personnel actions that the agency took against him in 2012 and 2013. *Id*. at 15-16, 18. The appellant also argues that the administrative judge erred in finding that his 2012 disclosure was not protected. *Id*. at 20-23. The agency has filed a response. PFR File, Tab 4.

¶4 The Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he engaged in whistleblowing activity by making a protected disclosure, and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶ 12 (2002).

The appellant has not made a nonfrivolous allegation that his 2004 disclosures were a contributing factor in a personnel action.

¶5 The appellant alleged that, in the spring of 2004, he informed several agency officials that Michigan State University was unsuitable to serve as a Data Coordination Center for a certain agency project and was engaging in malfeasance in connection with the project. IAF, Tab 1, Support Brief at 2-4, 12-13, Tab 5 at 5, 11, 19-20. He further alleged that, in 2007 or 2008, his pay was reduced in retaliation for these disclosures. IAF, Tab 1, Support Brief at 4, 18, Tab 5 at 6, 12, 20.

¶6 It is undisputed, however, that the appellant was working as a contractor during this time period—not under appointment as a federal employee. IAF, Tab

---

[2] Some of the events alleged in this appeal occurred after the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act of 2012 (WPEA). *See Miller v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 3, ¶ 14 (2014). However, we find that the provisions of the WPEA do not impact our analysis of the appellant's claims.

1, Support Brief at 1, 4, Tab 5 at 4, 6, 12, 20.  As relevant here, a "personnel action" under 5 U.S.C. § 2302(a)(2)(A), is an action with respect to an employee in, or applicant for, a covered position in an agency or a position in one of the government corporations listed in 31 U.S.C. § 9101.  Because the appellant did not allege that he was an employee or applicant for employment in any such position during the relevant time period, we agree with the administrative judge that he failed to make a nonfrivolous allegation that he was subjected to a "personnel action" within the meaning of the WPA.  ID at 6; *see Greenup v. Department of Agriculture*, 106 M.S.P.R. 202, ¶ 6 (2007).  Therefore, the Board lacks jurisdiction over the alleged reduction of his pay.  *See Greenup*, 106 M.S.P.R. 202, ¶ 6.

¶7        On review, the appellant argues that, although he was technically a contractor during the reduction in pay action, he was effectively an agency employee because he worked closely with other agency employees and the agency exerted tight control over his work.  PFR File, Tab 1 at 14-18.  He argues that "[t]o not apply an exception in these cases would result in a lack of protection for employees like the Appellant that engage in protected disclosures."  *Id*. at 16.  The appellant further argues that 41 U.S.C. § 4712 indicates Congress's intent to extend whistleblower protections to contract employees, and that the Board should therefore assert jurisdiction over his claim.  PFR File, Tab 1 at 17-18.

¶8        We have considered the appellant's arguments, but we find that his close working relationship with agency employees is irrelevant because the law requires that the appellant himself be an employee or applicant for employment with an agency. *Hartman v. Merit Systems Protection Board*, 77 F.3d 1378, 1381 (1996).  Neither the equities of this situation nor broad whistleblower protection policies empower the Board to expand its jurisdiction beyond that which is given by statute.  *See Lethridge v. U.S. Postal Service*, 99 M.S.P.R. 675, ¶ 10 (2005) (the Board cannot expand its own jurisdiction to address policy concerns); *Drake v. Department of Transportation*, 37 M.S.P.R. 676, 678 (1988) (the Board's

jurisdiction is conferred by statute or regulation, and the Board has no power to expand or diminish that jurisdiction).  Furthermore, while it is true that the law protects contract employees who have blown the whistle, it provides a different avenue of redress for such individuals than for individuals covered under the WPA.  *See* 41 U.S.C. § 4712.

¶9     The appellant also argues that the administrative judge failed to consider whether his 2004 disclosures were a contributing factor in the personnel actions to which he was subjected in 2012 and 2013, after he was appointed as a federal employee.  PFR File, Tab 1 at 15-16, 18.  We have reviewed the appellant's submissions below, and we find that he did not allege that his 2004 disclosures were a contributing factor in the alleged 2012 and 2013 personnel actions.  IAF, Tabs 1, 5.  The only personnel action to which the appellant linked his 2004 disclosures was his 2008 reduction in pay as a contract employee.  IAF, Tab 1, Support Brief at 18, Tab 5 at 12.  We therefore find that this argument was raised for the first time on review without a showing that it is based on new and material evidence, and that it provides no basis to grant the petition for review.  *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980).  Although the appellant now attempts to impute knowledge of his 2004 disclosures to the officials who allegedly retaliated against him in 2012 and 2013, PFR File, Tab 1 at 15-16, he made no attempt to do so below.  Furthermore, neither the timing of these events nor any other circumstances suggest that the 2004 disclosures were a contributing factor in personnel actions that occurred 7 or more years later.  *See Salinas v. Department of the Army*, 94 M.S.P.R. 54, ¶ 10 (2003) (personnel actions that occurred more than 2 years after the disclosures were too remote to establish a contributing factor through the knowledge/timing test of 5 U.S.C. § 1221(e)(1)); *cf. Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 22-23 (2013) (the appellant was subjected to a continuum of related personnel actions beginning shortly after his disclosure); *MaGowan v. Environmental Protection Agency*, 119 M.S.P.R. 9, ¶ 10 (2012) (the appellant alleged that an agency official

asked about her 2003 disclosures shortly before taking a personnel action against her in 2010).

¶10     The appellant further argues that his 2004 disclosures were protected. PFR File, Tab 1 at 18-20. Even so, this fact is immaterial because the appellant failed to make a nonfrivolous allegation that he was subjected to a personnel action because of these disclosures.

The appellant failed to make a nonfrivolous allegation that his 2012 disclosure was a contributing factor in a personnel action.

¶11     The appellant alleged that, on March 22, 2012, he attended a meeting with numerous agency officials, during which he disclosed problems with some computers that the agency was using to collect data on the prevention and treatment of HIV and AIDS. IAF, Tab 1, Support Brief at 6-7, 14, Tab 5 at 7, 13. Specifically, he alleged that the agency was using "Pocket PCs" to gather data for studies designed to inform the public about prevention and treatment of HIV and AIDS. IAF, Tab 1, Support Brief at 6-7, 14, Tab 5 at 7, 13. He alleged that these Pocket PCs were out of date, unsupported, unstandardized, and beset by numerous technological problems that resulted in inaccurate data collection, data loss, and data distortion. IAF, Tab 1, Support Brief at 6-7, 14, Tab 5 at 7, 13. Thus, the appellant alleged that the agency was hampered in collecting and compiling correct data with which to inform the public accurately about the prevention and treatment of HIV and AIDS. IAF, Tab 1, Support Brief at 14-15, Tab 5 at 13-14. He argued that the agency's actions constituted gross mismanagement and a gross waste of funds. IAF, Tab 1, Support Brief at 14-15, Tab 5 at 13-14. He further alleged that, after his disclosure at the meeting, the agency gave him a poor performance review, placed him on a performance action plan,[3] took away his teleworking privileges, excluded him from meetings, and subjected him to a

---

[3] It would appear that this performance action plan is functionally equivalent to what is commonly known as a "performance improvement plan" for underperforming employees.

hostile work environment. IAF, Tab 1, Support Brief at 7-9, 18-20, Tab 5 at 8-9, 14-16.

¶12    In determining that the Board lacks jurisdiction over this aspect of the appellant's claim, the administrative judge found that the appellant failed to make a nonfrivolous allegation that he reasonably believed that the money that the agency spent on the Pocket PCs (between $60,000 and $150,000 by the appellant's account) evidenced a gross waste of funds. ID at 8-9. We agree. ID at 8-9; IAF, Tab 1, Support Brief at 14, Tab 5 at 7; *see Downing v. Department of Labor*, 98 M.S.P.R. 64, ¶ 11 (2004) (a gross waste of funds is more than a debatable expenditure that is significantly out of proportion with the benefit reasonably expected to accrue to the government), *aff'd*, 162 F. App'x. 993 (Fed. Cir. 2006). In fact, the appellant's disclosure does not seem to concern a waste of funds so much as the agency's failure to spend additional funds on updated data collection devices. The appellant has not stated when the agency bought these Pocket PCs or what their original purpose was, but his allegation that they were "outdated" and warehoused in an unorganized fashion leaves us with the impression that the agency originally purchased them some time prior to 2012, and was attempting to repurpose them for a new project for which he alleges they were unsuitable. IAF, Tab 1, Support Brief at 6, 14, Tab 5 at 7, 13. Likewise, the fact that these problematic Pocket PCs were perhaps interfering with an expensive agency program does not lend itself to a finding that the appellant reasonably believed that the agency engaged in a gross waste of funds. IAF, Tab 1, Support Brief at 15, Tab 5 at 14. The Board's gross waste of funds analysis focuses on improper expenditures, *Embree v. Department of the Treasury*, 70 M.S.P.R. 79, 85 (1996), and we find that the appellant's allegations about the overall costs of the agency programs involving the Pocket PCs do not concern an expenditure of funds per se. Rather, they concern an allegation that the agency was mismanaging these programs.

¶13    The administrative judge also found that the appellant did not nonfrivolously allege that he reasonably believed that his disclosure concerned gross mismanagement.  ID at 7-8.  We disagree.  Gross mismanagement is an action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission.  *Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 16 (2007).  In this case, we find that the appellant made a nonfrivolous allegation that he reasonably believed that the agency's use of faulty Pocket PCs was having a significant adverse impact upon its mission to protect the public from health threats—in particular, the threats from HIV and AIDS.  According to the appellant, the use of these devices significantly impeded the collection of complete and accurate data for major agency projects in this area.  IAF, Tab 1, Support Brief at 14-15, Tab 5 at 13-14.  These allegations, if true, could establish that the appellant reasonably believed that the agency was grossly mismanaging its data collection efforts.  Furthermore, the appellant's allegations appear to be corroborated by an email exchange documenting the loss of survey data for 334 individuals during electronic upload.  IAF, Tab 5 at 24.  We disagree with the administrative judge that the appellant's allegations fell short of describing a significant risk of substantial impact, and that they were vague and conclusory.  ID at 7-8.

¶14    We also disagree with the administrative judge that the appellant's disclosure was not protected because he failed to allege that the agency attempted no resolution to the problems that he raised, and that there was no element of blatant negligence.  ID at 8.  The tenor of the appellant's allegation that the agency ignored the problem and continued to use the faulty Pocket PCs is that the agency failed to correct the problem.  IAF, Tab 1, Support Brief at 14-15.  Moreover, the Board no longer requires an "element of blatancy" to show a reasonable belief of gross mismanagement, *White v. Department of the Air Force*, 391 F.3d 1377, 1383 (Fed. Cir. 2004); *Tatsch v. Department of the Army*, 100 M.S.P.R. 460, ¶ 12 (2005), and we find that even if the agency eventually

took steps to correct the problem, this does not mean that the appellant could not have reasonably believed that gross mismanagement existed at the time of his disclosure.

¶15 Furthermore, although he did not raise the issue, we also find that the appellant made a nonfrivolous allegation that he reasonably believed that his disclosure concerned a substantial and specific danger to public health and safety. *See Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 14 (2014) (there is no requirement that an appellant correctly label the category of wrongdoing under section 2302(b)(8) in order to establish Board jurisdiction). The inquiry into whether a disclosed danger is sufficiently substantial and specific to warrant protection under the WPA is guided by several factors, among these: (1) the likelihood of harm resulting from the danger; (2) when the alleged harm may occur; and (3) the nature of the harm, i.e., the potential consequences. *Chambers v. Department of the Interior*, 602 F.3d 1370, 1376 (Fed. Cir. 2010). In this case, we perceive a substantial likelihood of harm from inaccurate recommendations to the public on the prevention and treatment of HIV and AIDS from a federal agency charged with informing the public on these matters. Furthermore, although the imminence of the harm is questionable, we find that its occurrence is not merely speculative, and it goes without saying that the nature of the potential harm is serious. The Board and the U.S. Court of Appeals for the Federal Circuit have found that the mismanagement of agency initiatives designed to protect public health and safety constitutes a substantial and specific danger to the same. *Chambers*, 602 F.3d at 1379 (a disclosure about reduced staffing levels leading to additional traffic accidents qualified as a disclosure of a danger to public safety); *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 14 (2014) (disclosures about changes to an airport screening area concerned public safety); *Miller v. Department of Homeland Security*, 111 M.S.P.R. 312, ¶¶ 15-19 (2009) (disclosures about changes to standard operating procedures for baggage screening constituted disclosures of danger to the public).

¶16    Although we find that the appellant made a nonfrivolous allegation that his March 22, 2012 disclosure was protected, we find that he failed to make a nonfrivolous allegation that it was a contributing factor in a personnel action. The appellant alleged that the following agency officials took personnel actions against him in reprisal for his disclosure:  (1) the Assistant Branch Chief (revoking teleworking privileges and providing "negative feedback"), IAF, Tab 1, Support Brief at 7, 18, Tab 5 at 8, 15, 34; (2) the Deputy Branch Chief (negative interim performance rating for plan year 2012), IAF, Tab 1, Support Brief at 7, 18-19, Tab 5 at 8, 14-15, 36-38; (3) the Branch Chief (placement on a performance action plan), IAF, Tab 1, Support Brief at 7-8, 18, Tab 5 at 8, 14, 41-43; (4) the Clinical Outcomes Team Lead (exclusion from work on a particular project), IAF, Tab 1, Support Brief at 7, 18-19, Tab 5 at 15, 34-35; and (5) his new supervisor (cancelling meetings with the appellant, directing rude and insulting comments and behavior toward the appellant, taking work away from the appellant, and subjecting the appellant to unfair criticism), IAF, Tab 1, Support Brief at 8-9, 19-20, Tab 5 at 8-9, 16.  The appellant also appears to attribute retaliatory actions to some unnamed agency officials (refusal to discuss performance review, making use of annual leave difficult, exclusion from work meetings, discouragement from providing input on projects, and discouragement from challenging personnel actions).  IAF, Tab 1, Support Brief at 7-8, 18, Tab 5 at 15.  It appears that there is at least one personnel action present here-placement on a performance action plan.  *See Hudson v. Department of Veterans Affairs*, 104 M.S.P.R. 283, ¶ 15 (2006) (placement on a performance improvement plan is a personnel action for purposes of an IRA appeal).  There may be other personnel actions as well, including a performance evaluation and a significant change in duties, responsibilities, or working conditions.[4]    *See*   5 U.S.C.

---

[4] It is not clear whether the appellant is challenging his final 2012 performance rating or just the interim rating that led to the performance action plan.  We are not aware that

§ 2302(a)(2)(A)(viii), (xii). However, the appellant has failed to make a nonfrivolous allegation that any of the officials involved in these actions knew about his disclosure at the March 22, 2012 meeting. He has not identified any of the individuals who were present at that meeting, and our careful review of all of the appellant's submissions below, including his original complaint to OSC, yields no information from which we can impute knowledge of his disclosure to any particular individual. IAF, Tabs 1, 5. For this reason, we find that the appellant failed to make a nonfrivolous allegation that his March 22, 2012 disclosure was a contributing factor in any personnel action, and we dismiss the appeal for lack of jurisdiction on that basis. *See Reed v. Department of Veterans Affairs*, 122 M.S.P.R. 165, ¶ 17 (2015); *Johnson v. Department of Defense*, 95 M.S.P.R. 192, ¶¶ 8-9 (2003), *aff'd*, 97 F. App'x 325 (Fed. Cir. 2004).

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8),

---

the Board has ever recognized an interim rating as a personnel action under 5 U.S.C. § 2302(a)(2)(A).

(b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board

neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                     _____
                                   William D. Spencer
                                   Clerk of the Board

Washington, D.C.